**Koch v. Kistler**

*John P. Lavelle*, County Solicitor, for plaintiffs.
*William B. Quinn*, Solicitor for Controller, for defendant.

HEIMBACH, P. J., June 11, 1973.—Defendant answers plaintiffs' allegation in its complaint that it

entered into an agreement with Dr. Potter for the latter to provide additional medical services at the Carbon County Home, to be compensated for such services at the rate of $25 an hour in addition to his annual salary of $5,204, by averring that his annual salary of $5,204 was payment in full for all services rendered by him, and that the hourly rate agreed to by plaintiffs for these additional services had never been set by the salary board.

Summarized, the testimony is that Dr. Potter has been employed by the Carbon County Institution District to furnish medical care to the patients in the county home since January 1, 1960, at a fixed annual salary. His salary in 1960 was $3,388 and had been raised to $5,204 by January 1, 1972.

What his services were to include had never been delineated until the latter part of August 1972. Up to that time he visited the home once a week, except in emergencies, kept minimal patient records and gave each patient a less than complete annual physical examination.

In August the county qualified for a grant of some $9,000 for the county home by entering into an agreement with the Department of Public Welfare, to, inter alia, provide additional medical services, keep detailed records and make a complete physical examination of each patient quarterly. Immediately prior to the commissioners entering into the agreement for the grant, an agreement was entered into between plaintiffs and Dr. Potter for the payment to him for the additional required services to be performed the sum of $25 an hour.

The payment order for Dr. Potter's October services in the amount of $262.50 was paid. The payment orders for November and December in the amount of $1,412.50 and $1,281.25, respectively, remain unpaid.

Defendant offered no testimony.

The issue thus before us is whether the defendant is legally justified in refusing payment of the sum of $2,693.75 to Dr. Potter due under an agreement between the commissioners and Dr. Potter.

The functions of the controller are delineated by the Act of August 9, 1955, P. L. 323, sec. 1702, 16 PS §1702. Summarized, these functions are to supervise the fiscal affairs of the county, including the accounts and official acts relating thereto of all officers or other persons who shall collect, receive, hold or disburse the public moneys. He has nothing to do with the management of the fiscal policies of the county commissioners, but shall refuse to authorize any fiscal transaction that is not authorized by law or has not been undertaken according to law, or has not received approval according to law, or as to which he desires upon reasonable grounds to investigate for or has already discovered any fraud, flagrant abuse of public office or any criminal act or neglect of any officer or other person of the county relating to their public accounts and transactions.

Defendant, having offered no testimony, resists payment for these two reasons, viz.:

(a) the transaction is one not authorized by law;

(b) that it has not been undertaken according to law and has not received approval according to law.

The controller argues that once a person becomes a county employe at a fixed annual salary for the performance of the duties of the office for which he is engaged, he is not entitled to receive further compensation for services of the same character, notwithstanding an increase in such employe's work load.

For this reason, he concludes the agreement for additional compensation is a bonus and, as such, is

a transaction not authorized by law. In support of this contention, he cites Lawson v. Allegheny County, 326 Pa. 242. The principle of law enunciated and followed in such cases is stated at page 245, where it adopted the lower court's statement, viz.:

" 'Where one is engaged as a full time employee in the public service at a regular salary commensurate with services rendered and established in conformity with the law it must be presumed that all services rendered by such employee to the municipality within the scope of his ostensible employment are covered by the original contract. To hold otherwise would be to invite endless litigation for compensation for over or extra time on the part of public employees.' "

The Lawson case is completely inapposite and, in fact, sustains plaintiffs' contention that their agreement is a legally authorized one, as we will later demonstrate. In the Lawson case, the Commissioners of Allegheny County resisted a suit brought against them by an architect, employed by the county at a fixed annual salary, for additional compensation for architectural work performed by him outside of his regular working hours *for the sole reason they had not entered into any express contract with him for these services.* The lower court found for the commissioners. An appeal to the Supreme Court followed. The Supreme Court apparently concluded from the record before it that the architect's salary was fixed by law, since it for the most part cited authorities in support of its affirmance, holding that salaries *prescribed or fixed by law* (supra, pages 243, 244), i.e., persons accepting public offices, those under contract but whose salary is fixed by law, i.e., a county solicitor, could not be increased even by agreement as being against public policy, although it did say (at page 243), that

appellant did not set up any express contract to pay for this service, but rests his demand on a quantum meruit. (Italics supplied.)

In reviewing the opinion of the lower court in the Lawson case,[1] no mention is made that the architect's salary was fixed by law. We conclude from the following statement of the court (page 487), which supports plaintiffs' contention that the agreement is legally authorized, that it was not:

"The court is of the opinion that had the board of county commissioners seen fit to recognize a moral obligation and to have paid the claim, or any portion thereof, none could have been heard to complain and that such a payment made by the county commissioners would have necessarily been sustained."

We hold that since the annual salary of Dr. Potter was not fixed nor prescribed by law, an agreement by the commissioners for additional compensation is a transaction authorized by law.[2]

Defendant likewise argues that since the salary board did not act upon the increase in salary, the transaction has not been undertaken according to law and has not received approval according to law.

In so contending, defendant completely ignores the Act of August 9, 1955, as amended, cited in the footnote, which, inter alia, states, 16 PS §2164:

"The county commissioners . . . shall have the power and it shall be their duty, with funds of the county, according to rules, regulations and standards established by the Department of Public Welfare:

"(8) To provide or to contract with any individual,

---

[1] Lawson v. Allegheny County, 85 Pitts. L. J. 487.

[2] The commissioners under the Act of August 9, 1955, P. L. 323, as amended, July 23, 1965, P. L. 229, 16 PS §2164, are mandated to provide health care for the county home patients.

. . . to provide care and services designed to help dependents remain in . . . county institutions."

And the provisions of Act of August 9, 1955, P. L. 323, secs. 1801 and 1802, as amended, 16 PS §§1801 and 1802, viz.:

§(1801) "The commissioners may make contracts and purchases for all purposes expressly or impliedly authorized by law."

And §1802, "[C]ontracts . . . which shall not require advertising or bidding involving services of the medical or legal profession . . ."

The commissioners have not changed the annual salary of Dr. Potter fixed by the salary board. Such salary continues. They have entered into an express contract for compensation at a stated hourly rate for those services that are additional to those Dr. Potter performed as a salaried employe. Such an agreement is a contract involving services of the medical profession and is authorized under the Act of August 9, 1955, supra. As in the case of any other contract, the salary board is not involved in the transaction.

Contrary to defendant's contention, section 26 of article III of the Constitution has no application. The prohibition in such section to an increase in compensation for public officers, servants, etc., prevents the legislature from passing a bill for extra compensation for those enumerated in the act. The legislature obviously has not acted in this matter.

In conclusion, we adopt the statement of the court in Thayer et al. v. McCaslin, Controller, 314 Pa. 553, at 557, viz.:

"Section 341 . . . provides: 'The controller shall have a general supervision and control of the fiscal affairs of the county, and of the accounts and official acts of all officers or other persons who shall collect,

receive or distribute the public moneys of the county, or who shall be charged with the management or custody thereof.' This refers to the accounting side of the county's business, not the contracting and management part thereof. Controllers are not over-lords of the other county officers. . . . He [the controller] is not intrusted with the duty of making, or even of supervising the contracts of other departments. He is the city's head bookkeeper, and his office is to see that the various departments do not exceed their appropriations, nor apply them to purposes not within their proper scope. To this end he is clothed with very large powers of examination and investigation, and a large measure of discretion, but they do not extend to the revision of lawful contracts made by other departments within their proper sphere.' "

Where a statute has conferred upon certain officials the power to act with respect to a certain matter, the controller cannot nullify their action by refusing to recognize a contract which they make. His duty in such circumstances is ministerial: Thayer et al. v. McCaslin, Controller, supra.

Wherefore, we enter the following

## ORDER

Now, to wit, June 11, 1973, judgment is entered in favor of plaintiffs. Defendant is directed forthwith to pay to Dr. Potter all sums due him on executed purchase orders for supplemental services rendered for the year 1972.